**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

LARGE AUDIENCE DISPLAY
SYSTEMS LLC,

      Plaintiff,

vs.                                                    Civil Action No. 2:09-CV-00356

TENNMAN PRODUCTIONS, LLC,            JURY TRIAL DEMANDED
JUSTIN TIMBERLAKE,
LOS ANGELES LAKERS, INC.,
BRITNEY TOURING, INC.,
BRITNEY SPEARS,
STEVE DIXON and
MUSIC TOUR MANAGEMENT, INC.,

      Defendants.
_____/

**<u>PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS STEVE DIXON'S AND
MUSIC TOUR MANAGEMENT, INC.'S MOTION TO DISMISS</u>**

TO THE HONORABLE T. JOHN WARD:

Plaintiff LARGE AUDIENCE DISPLAY SYSTEMS LLC (hereafter sometimes "LADS"

or "Plaintiff") files this Plaintiff's Response in Opposition to Defendants STEVE DIXON'S

("Dixon") and MUSIC TOUR MANAGEMENT, INC.'S ("MTM") Motion to Dismiss:

**SUMMARY**

Movants' claims of having recently moved from Texas to California and Connecticut,

respectively, not only lack any credibility whatsoever, they are also unavailing even if believed

because in a patent infringement suit (1) a corporation is deemed to reside in any district where it

is subject to personal jurisdiction when the suit is filed, and (2) venue for personal liability of a

corporate officer/owner may reasonably be based on the venue provisions for the corporation.

Venue is therefore proper in the EDTX regardless of where Movants may now claim to reside.

## FACTUAL BACKGROUND

Dixon is the sole employee of MTM. *See* Exhibit "A" to Motion to Dismiss at ¶2.  MTM and Dixon designed the systems for the Justin Timberlake "FutureSex LoveShow" and Britney Spears "Circus" tour performances that Plaintiff alleges are infringing upon Plaintiff's patent. *See* **Exhibit 1**, "03/11/10 Dixon Affidavit" at ¶¶5-7 & 17-18; **Exhibit 2**, "Declaration of Michael G. Burk" at ¶¶4 and Exhibit "B" thereto.

MTM and Dixon also provided "Tour Direction and Production Management" for the infringing Timberlake and Spears tours, as well as "Tour Management and Accounting" for the infringing Timberlake tour.  *See* Exhibit 2, "Declaration of Michael G. Burk" at ¶¶5-6 and Exhibits "C" and "D" thereto.  Dixon has also been described as the "Business Manager" for the infringing Timberlake tour. *See* Id., at ¶7 and Exhibit "E" thereto.

The "Tour Direction and Production Management" services provided by MTM and Dixon include assisting with "any and all aspects of a concert tour … which can include overall operations, routing, bookings, venue deals, vendor deals, logistics, planning, and staffing [emphasis supplied]."  *See* Id., at ¶5 and Exhibit "C" thereto.   The "Tour Management and Accounting" services provided by Dixon include providing "a supervisory role of [sic] all business components of a tour, including all logistics and traditional payroll services for personnel and travelling parties" [emphasis supplied]."  *See* Id., at ¶6 and Exhibit "D" thereto.

According to an interview with Dixon done by the El Paso Times on September 20, 2009, Dixon "oversees virtually every aspect of the [Spears "Circus" tour], including 46 performers, a 212-person crew and 28 semi-trailers worth of gear."  *See* Id., at ¶8 and Exhibit "F" thereto. That interview with Dixon in the El Paso Times also states that MTM "conducts its business from El Paso." *See* Id.

2

Tickets to infringing shows by Timberlake and Spears were sold into the EDTX and a televised showing of an infringing Timberlake show was broadcast into the EDTX. *See* **Exhibit 3**, "Declaration of Andrew S. Langsam" at ¶¶13-14, 16. Video recordings of an infringing Timberlake show are also being sold in the EDTX. *See* Exhibit 2, "Declaration of Michael G. Burk" at ¶12 and Exhibit "J" thereto.

## ARGUMENT AND AUTHORITIES

**I.    Dixon's March 11th Affidavit and September 30th Declaration are in Fatal Conflict**

On March 11, 2010, Dixon made out an affidavit in support of Defendants' Motion to Transfer Venue to the Central District of California. *See* Exhibit 1, "03/11/10 Dixon Affidavit." On September 30, 2010, Dixon made out a declaration in support of the Motion to Dismiss filed by Dixon and MTM. *See* Exhibit "A" to Motion to Dismiss, "09/30/10 Dixon Declaration." Several of the sworn statements made by Dixon in these two documents are in fatal conflict.

### Dixon's Story on March 11, 2010

In his March 11, 2010 Affidavit, Dixon was silent about the location of his personal residence and testified only that "**I have <u>investment property</u> which I visit <u>from time to time</u> at 2186 N. Starr Road, Palm Springs, California 92262** [emphasis supplied]." *See* Exhibit 1, "03/11/10 Dixon Affidavit" at ¶2.

### Dixon's New Story on September 30, 2010

Even though Dixon testified on March 11th that his Palm Springs property was merely an investment property that he visited only on occasion, Dixon, in his September 30, 2010 Declaration, conveniently "recalled" that he somehow "became a California resident in **early 2010**" and that he "currently reside[s] at **2186 N. Starr Road, Palm Springs, California 92262** [emphasis supplied]." *See* Exhibit "A" to Motion to Dismiss at ¶3. Dixon further claimed for

3

the first time on September 30th that "[b]eginning in **early 2010**, I was unable to travel with concert tours due to health issues, and I began working and handling MTM business **from my home office in Palm Springs, California** [emphasis supplied]." *See* Id., at ¶4.

Dixon however then goes on to contradict even his September 30th story of currently residing in California by also claiming on September 30th that since June of 2010, Dixon has been in Connecticut running MTM and other businesses while not on tour: "In June of 2010, I leased office space in Milford, Connecticut, **which is where I operate MTM and my other business interests when I am not traveling** [emphasis supplied]." *See* Id., at ¶4. Dixon admits that "MTM has no employees other than me." *See* Id., at ¶2.

Dixon's contradictory testimony can be summarized as follows:

(1)   <u>March 11, 2010</u>: Dixon testified that he has only an "investment property" in Palm Springs, California, that he visits "from time to time." *See* Exhibit 1, "03/11/10 Dixon Affidavit" at ¶2.

(2)   <u>September 30, 2010</u>: Dixon testified that he has resided in Palm Springs, California since "early 2010" and he still currently resides there. *See* Exhibit "A" to Motion to Dismiss at ¶3.

(3)   <u>September 30, 2010</u>: Dixon testified that since June of 2010, Dixon has been in Milford, Connecticut (when not on tour) running MTM out of its office there. *See* Id., at ¶4.

Dixon's conflicting testimony is simply not credible and should not be believed, particularly in light of the evidence provided by Plaintiff showing that Dixon and MTM have been and continue to be located in Texas.

Indeed, despite Dixon's recent "discovery" that he somehow moved to Palm Springs, California in "early 2010" even after having previously testified on March 11th that he only had an investment property in Palm Springs, California that he visited from time to time, Dixon, in both his March 11th Affidavit as well as his September 30th Declaration, has tellingly chosen to

remain silent about where he and MTM claim to have resided at the time of the commencement of this lawsuit, or at any time prior to "early 2010" for himself, or June of 2010 for MTM.

Dixon and MTM attempt in their Motion to downplay MTM's connections to El Paso, Texas.  However, an interview with Dixon in the September 20, 2009 El Paso Times entitled, "The Ringmaster: El Pasoan Steve Dixon stages Britney Spears extravaganza," states that MTM "conducts its business from El Paso."  *See* Exhibit 2, "Declaration of Michael G. Burk" at ¶8 and Exhibit "F" thereto.  At that time, Dixon had no motivation to claim that MTM was based anywhere other than in El Paso, unlike now, where Dixon and MTM are desperately seeking to avoid being subject to venue in the EDTX.  Despite Dixon's recent claim he began operating MTM from Connecticut in June 2010, the Nevada Secretary of State to this day continues to list El Paso for Dixon's address as president and director of MTM.  *See* Id., at ¶10 and Exhibit "H."

Further, on April 15, 2010, Dixon signed a document that he filed with the Nevada Secretary of State in connection with the formation of a new company of his called Hurly Burly Partners, Inc.  *See* Id., at ¶11 and Exhibit "I" thereto.  In that document signed by Dixon on April 15, 2010, Dixon identified himself as the president and director of Hurly Burly Partners, Inc., and Dixon listed his address as being in El Paso.  *See* Id.

The only evidence that Dixon and MTM have provided of their claimed recent moves to California and Connecticut is Dixon's naked and contradictory affidavit testimony, which simply is not credible and which should therefore not be believed.

At the time this lawsuit commenced, as well as for a lengthy period of time thereafter, if not through to the present time, Dixon and MTM have resided in Texas, notwithstanding their misguided after-the-fact attempts to create a contrary appearance.

## II.     Venue is Determined at the Time the Lawsuit is Commenced

Regardless of whether Dixon's newly-asserted and contradictory positions of having resided in California since "early 2010" and of operating MTM from Connecticut since "June of 2010" are true or not, Dixon's contentions are all for naught in any event because venue is determined when the suit is commenced. *V.E. Holding Corp. v. Johnson Gas Appliance Co.,* 917 F.2d 1574, 1583-84 (Fed. Cir. 1990)(stating that the "first test for venue under §1400(b) with respect to a defendant that is a corporation, in light of the 1988 amendment to §1391(c), is whether the defendant was subject to personal jurisdiction in the district of suit at the time the action was commenced").

Further, and pursuant 28 U.S.C. §1391(c), "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."  Therefore, regardless of wherever it now claims to reside, MTM for purposes of venue resides in any judicial district where it is subject to personal jurisdiction at the time this action was commenced.  Indeed, in *ATEN International Co. Ltd. v. Emine Technology Co., Ltd.,* 261 F.R.D. 112, 121 (E.D. Tex. 2009), this Court relied upon *V.E. Holding* and 28 U.S.C. §1391(c) in holding that a defendant in a patent infringement suit resided in EDTX for purposes of venue.

Venue is not affected by events occurring after the suit is filed.  *See Sidco Industries Inc. v. Wimar Tahoe Corp.,* 768 F.Supp. 1343, 1346 (D.Or. 1991) ("[v]enue is to be determined as of the time the complaint was filed and is not affected by a subsequent change of parties [emphasis supplied]"), *citing Exxon Corp. v. FTC,* 588 F.2d 895, 899 (3rd Cir. 1978).

Venue is therefore proper in the EDTX regardless of where MTM and Dixon now claim to reside because this Court has personal jurisdiction over MTM and Dixon.

**III.    Venue is Proper in the Eastern District of Texas Because this Court has Personal Jurisdiction over MTM and Dixon**

<u>A.    Venue for Corporate Officer/Owner May be Based on Venue for the Corporation</u>

Venue for personal liability of a corporate officer/owner for acts of infringement by the corporation, whether or not the facts support piercing the corporate veil, may reasonably be based on the venue provisions for the corporation.  *Hoover Group, Inc. v. Custom Metalcraft, Inc.,* 84 F.3d 1408, 1410 (Fed. Cir. 1996), citing 28 U.S.C. §§ 1400(b) and 1391(c).

Here, Dixon has admitted that he is MTM's president as well as its sole employee.  *See* Exhibit "A" to Motion to Dismiss, "09/30/10 Dixon Declaration" at ¶2.  Dixon was also personally involved in the design of the infringing systems used by the Timberlake and Spears Defendants.  *See* Exhibit 1, "03/11/10 Dixon Affidavit" at ¶¶5-7 & 17-18; Exhibit 2, "Declaration of Michael G. Burk" at ¶4 and Exhibit "B" thereto.

Dixon has testified that the other officers of MTM (Jerry Dixon and Patricia Dixon) "perform only clerical functions, primarily in administering email."  *See* Exhibit "A" to Motion to Dismiss, "09/30/10 Dixon Declaration" at ¶2.  Therefore, as the president, owner and admitted sole employee of MTM, Dixon is the individual through which MTM has performed much of the conduct that would vest this Court with personal jurisdiction over MTM.

In the *Hoover Group* case, the Federal Circuit Court affirmed the district court's ruling that the plaintiff's allegations of the individual defendant's ownership, control and active management of an allegedly infringing corporation provided a sufficient basis for finding that venue over the individual defendant was proper under §§1400(b) and 1391(c).  *Hoover Group,* 84 F.3d at 1410.  Here, the facts are even more compelling than in *Hoover Group,* because not only has Dixon admitted that he is the president, owner and sole employee of MTM, but Dixon has also admitted that he directly engaged in the design of the infringing systems used by the

Timberlake and Spears Defendants.  *See* Exhibit "A" to Motion to Dismiss, "09/30/10 Dixon Declaration" at ¶2; Exhibit 1, "03/11/10 Dixon Affidavit" at ¶¶5-7 & 17-18.

Therefore, if venue in the EDTX is found to be proper with respect to MTM, then venue in the EDTX should also be found to be proper with respect to Dixon.

> B.    The EDTX has Specific Personal Jurisdiction over MTM (and therefore Dixon)

Venue is proper in the EDTX with respect to MTM because the EDTX has personal jurisdiction over MTM.  28 U.S.C. §1400(b) provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.  28 U.S.C. §1400(b).  A corporation is deemed to reside in any district where it is subject to personal jurisdiction when the suit is filed.  28 U.S.C. §1391(c); *V.E. Holding Corp.,* 917 F.2d at 1583-84.

The existence of personal jurisdiction over an out-of-state defendant involves two inquiries: (1) whether a forum state's long-arm statute permits service of process, and (2) whether the assertion of personal jurisdiction would violate due process.  *Genetic Implant Sys., Inc. v. Core-Vent Corp.,* 123 F.3d 1455, 1458 (Fed. Cir. 1997).  Texas' long-arm statute extends to the limits of due process.  *Alpine View Co. Ltd. v. Atlas Copco AB,* 205 F.3d 208, 214 (5th Cir. 2000).  The two inquiries therefore collapse into a single inquiry of whether the exercise of personal jurisdiction comports with due process.  *See Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.,* 142 F.3d 1266, 1270 (Fed. Cir. 1998).

Specific jurisdiction requires that the plaintiff's claims arise from or relate to the defendant's contacts with the forum.  *Silent Drive, Inc. v. Strong Indus.,* 326 F.3d 1194, 1200 (Fed. Cir. 2003).  In patent litigation the injury occurs at the place where "the infringing activity

directly impacts on the interests of the patentee," which includes "the place of the infringing sales[.]" *Trintec Industries, Inc. v. Pedre Promotional Products, Inc.,* 395 F.3d 1275, 1280 (Fed. Cir. 2005), *quoting Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1571 (Fed. Cir. 1994).

Here, Defendants Tennman Productions, LLC, Justin Timberlake and Britney Spears all admit to having sold tickets into the Eastern District of Texas to concerts using systems alleged by Plaintiff to be infringing upon Plaintiff's patent, and Defendant Timberlake further admits that a televised showing of a concert using the video system at issue in this case was broadcast into the Eastern District of Texas. *See* Exhibit 3, "Declaration of Andrew S. Langsam" at ¶¶13-14, 16. Plaintiff has also provided evidence that video recordings of an infringing performance by Defendant Timberlake are being sold in the Eastern District of Texas. *See* Exhibit 2, "Declaration of Michael G. Burk" at ¶12 and Exhibit "J" thereto. The Eastern District of Texas is therefore a place where "the infringing activity directly impacts on the interests of the patentee," and it is "the place of the infringing sales[.]" *See Trintec Industries,* 395 F.3d at 1280.

MTM and Dixon engaged in "the design of the set and the accused infringing system as well as providing the tour logistics" for Tennman Productions, LLC, Justin Timberlake (collectively the "Timberlake Defendants"), on one hand, and Britney Touring, Inc., and Britney Spears (collectively the "Spears Defendants"), on the other. *See* Exhibit 1, "03/11/10 Dixon Affidavit" at ¶¶6-7. As evidence of their central role in the design, production and direction of these infringing performances, MTM and Dixon have in their possession "[s]ubstantially all of the documents and sketches, design concepts, discussion memorandum relating to the set designs" for both the Timberlake and Spears infringing systems on a "portable laptop which travels with [Dixon]." *See Id.,* at ¶¶17-18.

MTM's website states that MTM provided "Tour Direction and Production Management" for the infringing Timberlake and Spears tours, as well as "Tour Management and Accounting" for the infringing Timberlake tour.  *See* Exhibit 2, "Declaration of Michael G. Burk" at ¶¶5-6 and Exhibits "C" and "D" thereto.   MTM's website also states that its "Tour Direction and Production Management" services include assisting with "**any and all aspects of a concert tour ... which can include overall operations, routing, bookings, venue deals, vendor deals, logistics, planning, and staffing** [emphasis supplied]."  *See* Id., at ¶5 and Exhibit "C" thereto.

MTM's website further states that its "Tour Management and Accounting" services include providing "**a supervisory role of [sic] all business components of a tour, including all logistics and traditional payroll services for personnel and travelling parties**" [emphasis supplied]."  *See* Id., at ¶6 and Exhibit "D" thereto.  In providing tour direction, tour management, production design and accounting services for the infringing Timberlake and Spears tours, MTM and Dixon were therefore directly involved in virtually all of the business aspects of the infringing tours, including those activities that reached into and/or caused injury in the Eastern District of Texas.  Indeed, an article in the El Paso Times interviewing Dixon states that Dixon "oversees virtually every aspect of the [Spears "Circus" tour], including 46 performers, a 212-person crew and 28 semi-trailers worth of gear."  *See* Id., at ¶8 and Exhibit "F" thereto.

Further, Dixon is the former regional director for Ticketmaster in Houston.  *See* Id., at ¶8 and Exhibit "F" thereto.  Dixon is therefore highly experienced in all matters relating to concert ticket sales.   Given their oversight with respect to virtually all aspects of the infringing Timberlake and Spears tours, MTM and Dixon determined or at least knew that that the Timberlake and Spears defendants would appear in Houston, Dallas-Fort Worth, Shreveport and/or other cities surrounding the Eastern District of Texas, and MTM and Dixon knew that

tickets to performances using the infringing systems that Dixon and MTM designed for the infringing tour performances that Dixon and MTM also managed and directed would be sold into the Eastern District of Texas.   As tour director and manager, Dixon and MTM were also undoubtedly present at the infringing performances in Texas and Shreveport.

MTM and Dixon further knew that it is common in the industry for performers to create video recordings of their concert performances and to then sell these throughout the United States, including the Eastern District of Texas, just as the Timberlake defendants did of a performance using an infringing system designed by MTM and Dixon.

The Fifth Circuit Court of Appeals has held that an act committed outside the state that causes tortious injury within the state is sufficient to constitute minimum contacts:

> When a nonresident defendant commits a tort within the state, **or an act outside the state that causes tortious injury within the state**, that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state, including federal courts, to exercise personal adjudicative jurisdiction over the tortfeasor and the causes of actions arising from its offenses or quasi-offenses [emphasis supplied].

*Guidry v. United States Tobacco Co., Inc.,* 188 F.3d 619, 628 (5th Cir. 1999).

Patent infringement is a tort.   *See, e.g., Medical Solutions, Inc. v. C Change Surgical LLC,* 541 F.3d 1136, 1139 (Fed. Cir. 2008).   Plaintiff has alleged in this lawsuit that MTM and Dixon are direct infringers in addition to having induced infringement under 35 U.S.C. §271(b) and having contributed to infringement under 35 U.S.C. §271(c).

Specific personal jurisdiction over MTM and Dixon exists here because the contacts of MTM and Dixon with the Eastern District of Texas were purposeful, and Plaintiff's cause of action arises from or relates to these contacts.   *See, e.g., Central Freight Lines Inc. v. APA Transport Corp.,* 322 F.3d 376, 382-83 (5th Cir. 2003)(Texas court had specific jurisdiction over

New Jersey company where that company engaged in conduct "that had the clearly 'foreseeable' effect of 'causing business activity in the forum state").

Because this Court has specific personal jurisdiction over MTM and Dixon, venue is proper here in the Eastern District of Texas and Movants' Motion to Dismiss should be denied.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that the Court deny Defendants Steve Dixon's and Music Tour Management, Inc.'s Motion to Dismiss and all relief sought therein, and that the Court grant Plaintiff any and all other relief to which Plaintiff may be justly entitled.

Respectfully Submitted,

**The BURK LAW FIRM, P.C.**

 /s/ Michael G. Burk

Michael G. Burk
Texas Bar No. 03386500
burk@burklaw.com
248 Addie Roy Road, Suite A-203
Austin, Texas 78746
Phone:  (512) 306-9828
Facsimile:  (512) 306-9825

**Lead Counsel**

•     •     •

**Of Counsel to the Burk Law Firm, P.C.:**
Colten W. Smith
Texas State Bar No. 50511600
smith@burklaw.com
Joseph W. Schultz
Texas State Bar No. 24002913
schultz.oc@burklaw.com
248 Addie Roy Road, Suite A-203
Austin, Texas 78746
Phone:  (512) 306-9828
Facsimile:  (512) 306-9825

•   •   •

**MEYERTONS, HOOD, KIVLIN,
KOWERT & GOETZEL, P.C.**
Eric B. Meyertons
Texas State Bar No. 14004400
emeyertons@intprop.com
Ryan T. Beard
Texas State Bar No. 24012264
rbeard@intprop.com
700 Lavaca, Suite 800
Austin, Texas 78701
(512) 853-8800 (telephone)
(512) 853-8801 (facsimile)

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of October, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and, pursuant to Local Rule CV-5(a)(3), all counsel of record who are deemed to have consented to electronic service in this case have therefore been served on that date with a copy of the foregoing.

/s/ Michael G. Burk
Michael G. Burk