IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

LARGE AUDIENCE DISPLAY
SYSTEMS LLC,

      Plaintiff,

vs.

TENMANN PRODUCTIONS, LLC,
JUSTIN TIMBERLAKE,
LOS ANGELES LAKERS, INC.,
BRITNEY TOURING, INC.,
BRITNEY SPEARS and
PUSSYCAT DOLLS, LLC,

      Defendants.

Civil Action No. 2:09-CV-00356

DECLARATION OF
ANDREW S. LANGSAM, ESQ.

**ANDREW S. LANGSAM**, an attorney duly admitted to practice law before the Courts of the State of New York and admitted *pro hac vice* in the above-captioned matter, hereby declare and affirm under the penalties of perjury as follows:

    1.    I am a partner at Pryor Cashman LLP, attorneys for Defendants, Tenmann Productions, LLC ("Tenmann"), Justin Timberlake ("Timberlake"), Britney Touring, Inc. ("Britney Touring") and Britney Spears ("Spears"), collectively with the Los Angeles Lakers, Inc., the "Moving Defendants" in this action. As such, I am fully familiar with the facts set forth below. I make this declaration in support of the Moving Defendants' Joint Motion to Transfer Venue in this case to the Central District of California.

**Plaintiff, Metcalf and the LADS US Patent**

    2.    Upon information and belief, Large Audience Display Systems LLC ("LADS") is the shell entity which was formed for the sole purpose of trying to establish and maintain

1



jurisdiction in the Eastern District of Texas.   LADS was formed two days before the commencement of the action.

3.     Upon information and belief, LADS has conducted no business, executed no contracts and established not a single license concerning its Patent in the Eastern District of Texas.  In fact, LADS, on information and belief, has not entered into any contracts concerning the Patent nor licensed the same to anyone, anywhere.

4.     U.S. Patent No. 6,669,346, the patent-in-issue (the "Patent") was initially issued to Darrell J. Metcalf ("Metcalf") the inventor, on December 30, 2003.  A copy of the Patent was attached to the Complaint.   There is no ownership interest reflected on the face of the Patent indicative of LADS, indicating that the Patent issued to Metcalf in his individual capacity.

5.     A search of the available records of the U.S. Patent Office indicates Metcalf assigned the "entire right, title and interest" in and to the Patent to LADS on October 21, 2009. A true and correct copy of the Assignment and the U.S. Patent Office Patent Assignment Data Sheet are attached hereto as Exhibit A.

6.     Through conducting a search of available records maintained with the Texas Secretary of State, I obtained LADS's Certificate of Formation and learned that Plaintiff only became an entity on November 9, 2009, nineteen days *after* the assignment of the Patent from Metcalf to LADS.  A true and correct copy of Plaintiff's Certificate of Formation is attached hereto as Exhibit B.

7.     The Certificate of Formation reflects that Metcalf is the initial member, organizer of Plaintiff and its managing member. *See* Exhibit B.

8.     Upon information and belief, from the time of the Patent's issuance in late 2003 to its Assignment to LADS on October 21, 2009, Metcalf owned the Patent, and thus, Metcalf

personally owned the Patent throughout the period Plaintiff claims infringing activity occurred by the named Defendants.

9.    The Complaint in this action was filed only two days after Plaintiff was formed.

10.    Given the close proximity of Plaintiff's formation to the filing of the Complaint, an investigator was retained within the State of Texas to determine if facts existed to support Plaintiff's first allegation in the Complaint concerning its residency within Texas and to ascertain if Plaintiff's allegation in the Complaint of "doing business" in Texas was supportable.

**Plaintiff's Absence of Real Ties to The Eastern District of Texas**

11.    James Childress' Affidavit confirms that Plaintiff does not maintain an operating office at 5935 Old Bullard Road, #207, Tyler, Texas, the address stated for Plaintiff's office in the Complaint and in the Certificate of Formation.   The investigator found exactly what Defendants expected--Plaintiff is a shell of a company, has never even obtained the keys to its "office," seems to have never set foot into the "office" and has conducted absolutely no business at any Texas-based address, contrary to the very first numbered allegation of the Complaint.

**Defendants and the Allegedly Infringing Activity**

12.    Neither Plaintiff nor any of the Defendants reside or have close ties to the Eastern District of Texas.  Plaintiff's Complaint names six Defendants, all of whom have strong ties to or maintain offices, conduct entertainment-related businesses or, in the case of The Los Angeles Lakers, Inc. ("The LA Lakers") reside in the Central District of California, and none of whom maintain offices or residences in the Eastern District of Texas.

13.    Defendant Tennman Productions, an entertainment company, routinely and frequently conducts business in the Los Angeles area and has never conducted business or

appeared in any way in the Eastern District of Texas relating to the Patent nor the accused infringing system, save for the incidental sale of tickets to concerts which are held elsewhere.

14.    Defendant Timberlake, an individual who is a well-known singer and entertainer, routinely and frequently conducts entertainment-based business in the Los Angeles area and has never conducted business or appeared in any way with relation to the acts which are the subject of the Complaint in the Eastern District of Texas, except for the incidental sale of tickets to his concerts held elsewhere and the televised showing throughout the United States of a video presentation by HBO of a show conducted in New York of his Tour performance.

15.    Defendant The LA Lakers is a California corporation with a principal place of business at 55 N. Nash St., El Segundo, California 90245.  The Declaration of James Perzik, CEO of The LA Lakers is part of the moving papers in support of the Joint Motion to Transfer. While The LA Lakers are a basketball team in the NBA and their games are televised throughout the United States, the accused infringing system, substantially involved in the pre-game entertainment, is generally not shown on those televised performances.  The LA Lakers' use of the accused infringing system has only occurred in Los Angeles, CA.

16.    Defendant Britney Touring is slated for dissolution, but in its existence, conducted its entertainment business primarily in the Central District of California, which is in Los Angeles.  This entity, however, was not responsible for the Britney Circus Tour, at which Plaintiff's Complaint alleges the accused infringing system was used.  On tour Ms. Spears, also a well known entertainer, appeared in Texas, of course, and tickets were incidentally sold in the Eastern District of Texas, but the accused infringing system was not used within the Eastern District of Texas.

17.     Defendant Spears, an individual, maintains a place of residence in Los Angeles, California.

18.     Prior Defendant Pussycat Dolls, LLC (the "Pussycat Dolls") have now been dismissed, without prejudice.  On information and belief, The Pussycat Dolls have a principal place of business located in or near Los Angeles, California.

19.     Plaintiff does not allege (nor could it) that any of the Defendants nor representatives of the Defendants have ever actually appeared in the Eastern District of Texas in connection with any making, using, selling, offering for sale, or importing, directly or indirectly any of the accused infringing systems.

20.     Plaintiff claims that Defendants infringed the Patent by using the "inventive" system at various events.   Plaintiff alleges these activities occurred during Timberlake's "FutureSex/LoveShow Tour" concert performances ("Timberlake's Tour"), during Spears' "Circus Tour" concert performances ("Spears' Tour"), during The LA Lakers sporting events (the "Lakers' Games") and during Defendant Pussycat Dolls concert performances (collectively, "the Events;" each occurrence being an "Event").

21.     While at least one Event by each Defendant, at one time or another, took place in the Central District of California, not one of the Events *ever* took place in the Eastern District of Texas.

**Location of Additional Witnesses: Witnesses for Spears; Britney Tours; Timberlake; and Tennman Productions**

22.     As explained more fully in the accompanying Affidavit of Steve Dixon, he was the musical concert tour designer and operator for Timberlake's Tour and the Spears' Tour and was one of a team of set designers and in charge of logistics and business operations for Spears, Britney Touring, Tennman and Timberlake.  Dixon and most of the vendors and suppliers of the

mechanisms and the elements comprising the accused infringing systems, as well as substantially all documents and related evidence concerning the design, components and logistics of the allegedly infringing Events, are localized in California.

**Location of Additional Witnesses: Witnesses for The LA Lakers**

23.     As explained more fully in the accompanying Declaration of James L. Perzik, Esq. and the Declaration of Kevin Bilida, the witnesses with knowledge or information concerning The LA Lakers' accused infringing systems are also located in the Los Angeles area; have not been to or conducted business in the Eastern District of Texas; and would be severely inconvenienced by having to travel to the Eastern District of Texas for matters relating to this action.

24.     I understand that The LA Lakers will be substantially inconvenienced if this case is not transferred from the Eastern District of Texas to the Central District of California. In short, none of The LA Lakers' personnel and none of their potential witnesses in connection with the facts concerning this patent infringement action have any connection or affiliation whatsoever with Marshall, Texas or the Eastern District of Texas and all of the witnesses who have any knowledge or information concerning the accused infringing system reside in Los Angeles.

25.     Defendant The Pussycat Dolls have now been dismissed without prejudice and thus its inconvenience of defending in Texas and the balance of convenience towards transfer of the case to the District Court for California may no longer be relevant.

**Venue**

26.     Venue in this case is proper in the Central District of California. All of the Defendants routinely conduct business in the Central District of California, or, as in the case of The LA Lakers and Spears, have a residence in California. This alone clearly establishes proper

venue in the Central District of California over the Defendants. Original venue in the Central District of California is at least as reasonably based as the stretch of the facts to support venue which Plaintiff made in bringing the action in the Eastern District of Texas.

27.     Moving Defendants Spears, Britney Tours, Timberlake, and Tennman have conducted business within the Central District of California (actually appearing in concerts there with the accused infringing systems) and the LA Lakers, too, have a regular and established place of business in the Central District of California. Their games were performed in the Central District of California with the accused infringing system. The Pussycat Dolls also appeared as the Opening Act for Spears at an Event in the Central District of California, also using the accused infringing system. Indeed, an alleged infringing Event for each Defendant occurred in the Central District of California and not one occurred in the Eastern District of Texas. For example, Timberlake's Tour with the accused infringing system was performed in Los Angeles, CA on January 16, 2007; Spears' Tour with the accused infringing system was performed with the Pussycat Dolls in Los Angeles, CA on April 16-17, 2009; and The LA Lakers' games, with the accused infringing system, were presented in the same arena in Los Angeles, CA.

28.     Thus, Plaintiff could have (and should have) brought this action in the Central District of California against all Defendants in compliance with 28 U.S.C. § 1400(b).

**The Private Interest Factors Weigh in Favor of Transferring This Case to the Central District of California: All Sources of Proof Are Located in the Central District of California**

29.     All parties, third party witnesses, vendors and suppliers, and sources of proof are located, have offices, or have done business within the Central District of California-- this factor weighs strongly on the side of transferring the case to the Central District of California.

30.     None of the Defendants reside or maintain offices in the Eastern District of Texas. All of the Defendants are located in, conduct business in, or can easily, quickly, conveniently and inexpensively be present in California.  California is the crossroads of air travel and the "center of gravity" for much of the entertainment industry, including the Defendants.

31.     Defendants Timberlake and Tennman routinely conduct business in and around Los Angeles.

32.     Defendant Timberlake is a world-renowned entertainer and performs and rehearses for tours in California.  Rarely, if ever, do Timberlake or Tennman travel to the Eastern District of Texas for business.

33.     Not one single use or Event using the accused infringing system in the Timberlake Tour took place in the Eastern District of Texas.  Substantially all of Timberlake's contacts with witnesses who may be called to testify with relevant evidence in this action were in Los Angeles or Las Vegas.

34.     Defendant Spears maintains a residence in Los Angeles.  Defendant Britney Touring is in the process of dissolving, but when it did function, routinely was present in and conducted business in Los Angeles.

35.     I understand that The LA Lakers maintain an office in California about 22 miles from the Central District of California's federal courthouse.

36.     Given the relatively short distances required for Defendants to attend Court or legal proceedings within the Central District of California, the centralized location of the Central

District of California for these Defendants and their suppliers and vendors of various elements of the accused infringing systems, and the lengthy distances and huge inconvenience required for Defendants and their witnesses to travel to the Eastern District of Texas, it would be far more convenient, less burdensome and far less expensive for Defendants to litigate in the Central District of California.

**Even Convenience to Plaintiff Warrants Transfer to the Central District of California**

37.     Not only is the Central District of California more convenient for Defendants and their witnesses, suppliers, representatives and employees, it is also a more convenient forum for Plaintiff and Metcalf, who, upon information and belief, will be Plaintiff's main witness.

38.     Upon information and belief, although Plaintiff purports to be a limited liability company of the State of Texas and claims to utilize and do business at an office in the Eastern District of Texas, the facts belie that assertion.  Childress' Affidavit established that Plaintiff is not in business now; never opened up the "office;" hasn't picked up the keys to the office; and has not done any business within Texas except for trying to look like it is doing business in the State for purposes of maintaining this action in Texas.

39.     Any assertion by Plaintiff that it does business in Texas is untrue and, on information and belief, Plaintiff has yet to sign a single contract relating to or licensing the Patent, whether in Texas or anywhere.  There has been no business conducted by Plaintiff, anywhere, least of all in the Eastern District of Texas.  Plaintiff's purported rental of an office in Texas while not even picking up the keys for the office shows the sham nature of Plaintiff's allegation of "doing business" in Texas.

9

40.     If Plaintiff maintains an active residence anywhere, upon information and belief, it is at the address listed on its Certificate of Formation: Fillmore, CA, which is approximately 60 miles from the federal courthouse in Los Angeles, California and approximately 1,647 miles from the federal courthouse in Marshall, Texas.

**Non-Party Witnesses and Other Sources of Proof Are Located in the Central District of California**

41.     Notably, none of the alleged infringing Events occurred in the Eastern District of Texas and no known source of proof is located there.

42.     Nothing in Plaintiff's Complaint suggests that any infringing system was used in the Eastern District of Texas or that a non-party witness or documents pertinent to the design, elements, mechanisms, planning or execution of the Events with the accused infringing systems are located in the Eastern District of Texas.

43.     In contrast, non-party witnesses, vendors, designers, suppliers and/or documents relating to the design, construction, features, and the presentation of the Spears' Tour, Timberlake's Tour and The LA Lakers' pre-game entertainment and specifically the accused infringing systems are all located in the Central District of California.

44.     To the extent any non-parties have knowledge of the design, operation, elements, mechanisms, etc. of the accused infringing systems used by Moving Defendants or any relevant documents relating to the alleged infringement at the LA Lakers' games or Events, that proof is located in and around where the Defendants and the systems designers, vendors, and implementers are located.  That is within the Central District of California and the 100-mile subpoena power of the Central District of California.

**Availability of Compulsory Process Weighs in Favor of Transfer to California**

45.     As explained above, nearly all of the witnesses who may possess knowledge or information relevant to this action and the accused infringing systems are located within the subpoena power of the Central District of California and can thus be compelled to testify.

46.     None of the parties or potential witnesses and no documents are located within the subpoena power of the Eastern District of Texas.

**The Cost of Attendance For Willing Witnesses and Additional Practical Problems Weigh in Favor of Transfer to California**

47.     The inconvenience to the California-based witnesses and parties would be monumental should they be required to travel to the Eastern District of Texas for Court proceedings in this action.   The coordination of the travel schedules of these world-wide entertainers would be very difficult, too, especially if presence in Texas were required.  Clearly, California is more convenient and would be less expensive.

48.     The closest major airport to Marshall, Texas is Dallas-Forth Worth International Airport, which is approximately 157 miles, or an almost three hour drive, from the center of Marshall, Texas.

49.     For a case where even the Plaintiff, Moving Defendants and substantially all key witnesses are located in or near Los Angeles, travelling and transporting parties, witnesses and proof in and to the Eastern District of Texas is unwarranted and would be a tremendous inconvenience, waste of time and waste of valuable resources.

**The Public Interest Factors Weigh in Favor of Transferring This Case to the Central District of California: The Central District of California's Local Interest in the Litigation Militates in Favor of Transfer**

11

50.    Because the Moving Defendants all conduct entertainment-based business, and in the case of Spears and The LA Lakers reside in the Central District of California, because the designers and the vendors/suppliers of the accused infringing systems are within California, because even the managing member of LADS, the Plaintiff, actually resides in California, and because the accused infringing systems employed in the Events and at the LA Lakers' games were all presented in the Central District of California, the Central District of California has a strong local interest in determining the merits of the litigation.  In contrast, the parties, even including the managing member of the Plaintiff, have no substantive ties to the Eastern District of Texas.  Indeed, the only contact with the State of Texas, any of the parties and the issues presented by the litigation is the sham of an office located in Tyler, Texas and the establishment of Plaintiff as an LLC two days before the commencement of the litigation in Texas.

51.    The only connection Plaintiff alleges this case has to the Eastern District of Texas is the *possible* sale of goods tenuously relating to the Events and incidental ticket sales to the Events (but no Events) in the district and an empty, unused office.

52.    The citizens of the Eastern District of Texas should not have to consider a case between primarily California litigants involving activity that did not occur in the Eastern District of Texas.  It is readily apparent that the sham of "doing business" alleged by Plaintiff in the Eastern District of Texas was to try to maintain the case here when, obviously, the case should have been brought in California.

53.    The parties, the witnesses, the events at issue, and other sources of proof are all substantially more connected to the Central District of California than the Eastern District of Texas.

12

Dated: New York, New York
        March 12, 2010

ANDREW S. LANGSAM